IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX LUKOVSKY, MUHAMMED KHAN, LARRY MITCHELL, ANTONIO HUGGINS, SAMSON ASRAT, ANATOLIY ZOLOTAREV, YEVGENIY SKURATOVSKY, and VLADIMIR VASILEVSKI,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY, JOHN SADORRA, RENATO SOLOMON, VERNON CRAWLEY, MICHAEL ELLIS, PHILLIP GINSBURG, and DORIS LANIER,<br><br>Defendants. | No. C 05-00389 WHA<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND VACATING HEARING** |

**INTRODUCTION**

In this employment-discrimination action, defendants move for judgment on the pleadings on plaintiffs' third claim for relief under 42 U.S.C. 1981 pursuant to Federal Rule of Civil Procedure 12(c). This order finds that California public employees may maintain an action for discrimination under Section 1981. Defendants' motion is, therefore, **DENIED**.

**STATEMENT**

Plaintiffs Alex Lukovsky, Muhammed Khan, Larry Mitchell, Antonio Huggins, and Samson Asrat alleged that they were employees for defendant City of San Francisco, working in the maintenance division of the City's Municipal Transportation Agency ("MUNI"). Plaintiffs Yevgeniy Skuratovsky and Vladimir Vasilevski claimed to be former job applicants of the City. Plaintiff Anatoliy Zolotarev alleged that he was a potential job applicant.

On May 20, 2005, plaintiffs filed their second amended complaint. In their third claim for relief, plaintiffs alleged a deprivation of their civil rights under Section 1981 by defendants, the City and County of San Francisco and five city employees. Underlying this claim, plaintiffs alleged that defendants discriminated on the basis of race by giving preferential treatment to Asian and Filipino applicants for the position of electrical-transit-system mechanic, or so-called "7371" positions, with the San Francisco Municipal Transportation Agency ("MUNI"). In 2001, defendants purportedly hired several Asian and Filipino applicants who did not meet the minimum qualifications for the job. Plaintiffs also contended that defendants failed to make information about 7371 openings available to potential candidates who were not Asian or Filipino. According to plaintiffs, this failure included not only flawed information about permanent openings in 2001, but also about provisional positions in 2000 that ultimately could have led to permanent 7371 positions. Defendants now move for judgment on the pleadings as to this third claim.

**ANALYSIS**

FRCP 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings is evaluated according to virtually the same legal standard as a motion to dismiss pursuant to FRCP 12(b)(6), in that the pleadings are construed in the light most favorable to the non-moving party. "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (citation omitted).

Section 1981(a) provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Our circuit has made clear that a plaintiff "can recover under section 1981 only if the terms detailed in his job description create contractual rights or constitute laws." *Judie v. Hamilton*, 872 F.2d 919, 922 (9th Cir. 1989).

Relying on *Judie*, defendants here argue that plaintiffs cannot possibly obtain relief under Section 1981 because public employment in California is conferred by statute, not contract. As public employees (or applicants to be public employees), defendants contend that plaintiffs lack the requisite contractual employment rights. Defendants' argument would effectively eliminate Section 1981 claims by public employees in California. This order holds that defendants' argument goes too far.

As a threshold matter, this order must determine what law to apply, federal or California, when determining whether public employees in California have contractual rights protected by Section 1981. The *Judie* opinion articulated a three-part test for answering this threshold question:

> First, courts are to look to the laws of the United States "so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect." If no suitable federal rule exists, courts undertake the second step by considering application of state "common law, as modified and changed by the constitution and statutes" of the forum State. A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not "inconsistent with the Constitution and laws of the United States."

*Id*. at 922 (quoting *Burnett v. Grattan*, 468 U.S. 42, 47–48 (1984)). In *Judie*, plaintiff was an employee at a state run hospital in Washington. The plaintiff claimed to be the victim of racial discrimination because he was not allowed to perform his supervisory duties and was improperly suspended. In determining whether plaintiff had the requisite contractual relationship with the hospital, the *Judie* court first noted that "we know of no federal common

3

1  law of contracts for section 1981 claims. We therefore should borrow Washington state law,
2  provided it is not inconsistent with federal law." Under Washington law "the terms of public
3  employment, other than pension rights, do not create contractual expectancies. Rather, they are
4  part of a system of personnel administration." *Id*. at 923. "If the terms of public employment
5  affecting compensation, layoffs, and reemployment do not create contractual expectancies, then
6  we do not believe that Judie's job description creates contractual expectancies either." The
7  court found no inconsistency between Washington law and federal civil rights policies, so the
8  Section 1981 claim was, therefore, denied.

9  　　　As in *Judie*, this order recognizes that the civil rights statutes do not provide a body of
10  contract law. Preliminarily, at least, this order must determine what contractual rights
11  California law provides to applicants for public-employee positions and public employees
12  seeking promotions.

13  　　　Like Washington law, under California law the public-employment relationship is not
14  contractual. "[I]t is well settled in California that public employment is not held by contract but
15  by statute and that, insofar as the duration of such employment is concerned, no employee has a
16  vested contractual right to continue in employment beyond the time or contrary to the terms and
17  conditions fixed by law." *Shoemaker v. Myers*, 52 Cal.3d 1, 23–24 (1990) (citations omitted).
18  But this does not mean that no contractual rights arise for California public employees:

> [A] long line of California cases establishes that with regard to at least certain terms or conditions of employment that are created by statute, an employee who performs services while such a statutory provision is in effect obtains a right, protected by the contract clause, to require the public employer to comply with the prescribed condition.

*White v. Davis*, 30 Cal.4th 528, 564–65 (2003). The cases imposing such contractual duties on a public employer primarily include the right to remain in an office, the continuation of civil service status, the right to the payment of salary which has been earned and the right to retain an accrued pension. *Id*. at 565–66. Plaintiffs rely heavily on this language from *White*, contending that their Section 1981 claims should survive under the second prong of the *Judie* test. It is a close question of state-law whether promotion and hiring fall under the *White* exceptions.

4

Even if this order agreed with defendants that no contractual rights exist for promotion or hiring for public employment under California law, however, this order must hold that a predominant federal interest mandates that California public employees have recourse to Section 1981 for discrimination relating to such conduct.

"The right to dispose of one's labor freely by contract is at the heart of the protections afforded by § 1981." *Sagana v. Tenorio*, 384 F.3d 731, 737 (9th Cir. 2004) (*citing Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 441 n. 78 (1968)). The Supreme Court's interpretation of Section 1981 shows that it was a foregone conclusion that the protections of Section 1981 extend to *governmental* discrimination (while it was a *more* difficult question as to whether the statute covered *private* discrimination). *See, e.g.*, *Johnson v. Railway Exp. Agency, Inc.*, 421 U.S. 454, 459 (1975). There is thus a clear federal policy expressed in the civil rights statutes to prevent employment discrimination by governmental entities.

The type of employment activity at issue here—promotion and application—falls within the heart of this federal policy. "Prior to November 12, 1991, '[o]nly where the [denied] promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981.'" *Strother v. S. Cal. Permanente Medical Group*, 79 F.3d 859, 876 (9th Cir. 1996) (*quoting Patterson v. McLean Credit Union*, 491 U.S. 164, 185 (1989)). In 1991, however, Congress amended Section 1981 to include the provision that "the term 'make and enforce contracts' includes the making, performance, modification of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. 1981(b). With this amendment, Congress swept in not only the initiation of the employment relationship but also subsequent modifications during the course of the employment relationship such as promotion. To deprive plaintiffs here recourse to these protections would clash with clear federal policy. Under the three-part analysis from *Judie*, this order must follow this predominant federal interest.

It is worth noting that this is a significant distinction between *Judie* and the instant case. Under the old version of Section 1981, the conduct in question in *Judie*, suspension and performance of supervisory duties, was not a fundamental component of the contractual rights

5

protected by Section 1981. The conduct at issue here, hiring and promotion, falls squarely within the amended version of Section 1981. This order thus finds that plaintiffs may maintain their Section 1981 claims.*

## CONCLUSION

For the foregoing reasons, defendants' motion for judgment on the pleadings is **DENIED**. Finding further argument unnecessary, hearing on this motion is **VACATED**.

**IT IS SO ORDERED.**

Dated: February 21, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

* As both parties recognize, the question at issue in this order, whether California public employees may maintain actions under Section 1981 actually *was* resolved by the Ninth Circuit. In *Ramirez v. Kroonen*, Case No. 01-55994, 44 Fed.Appx. 212, 217 (9th Cir. Aug. 12, 2002), the court held that disallowing plaintiff's Section 1981 claim would "improperly provide[] a blanket immunity for all California employers from § 1981 liability." Because that opinion was not selected for publication in the Federal Reporter, however, the instant order may not cite to the *Ramirez* opinion pursuant to Ninth Circuit Rule 36-3.