IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX LUKOVSKY, MUHAMMED KHAN, LARRY MITCHELL, ANTONIO HUGGINS, SAMSON ASRAT, ANATOLIY ZOLOTAREV, and YEVGENIY SKURATOVSKY,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO MUNICIPAL TRANSPORTATION AGENCY, JOHN SADORRA, RENATO SOLOMON, VERNON CRAWLEY, MICHAEL ELLIS, and DORIS LANIER,<br><br>Defendants. | No. C 05-00389 WHA<br><br>**ORDER GRANTING DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT AND VACATING HEARING** |

## INTRODUCTION

In this employment-discrimination action, defendants move for summary adjudication of the claims under 42 U.S.C. 1981 brought by plaintiffs Anatoliy Zolotarev and Yevgeniy Skuratovsky. Defendants make this motion on the grounds that Zolotarev and Skuratovsky's Section 1981 claims are barred by the statute of limitations. This order finds the claims are so barred. Defendants' motion, therefore, is **GRANTED**.

## STATEMENT

In December 1999, San Francisco's Municipal Transportation Agency ("MUNI") issued a job announcement for provisional positions as electrical transit system mechanics

("7371 positions"). 59 people submitted applications in response. MUNI considered the applications and written-performance tests. For the top thirty candidates, in-person interviews were taken. MUNI then compiled a final list ranking the remaining candidates. As of March 2000, MUNI secured funding to hire the top thirteen candidates.

In June 2000, MUNI received authorization to hire six more people for the provisional 7371 positions. MUNI reevaluated the applications of the remainder of the earlier pool of candidates who were interviewed but not hired. After reviewing the candidates' qualifications and conducting new interviews, a new ranking of applicants was prepared.

In July 2000, MUNI issued another job announcement, seeking additional applications for provisional 7371 positions. 57 people applied. MUNI again ranked these applicants. MUNI received funding to hire eight of these candidates for provisional 7371 positions.

In October 2000, MUNI obtained funding to hire permanent 7371 mechanics. MUNI issued a job announcement seeking applicants for the permanent positions. The announcement was distributed at various city offices, local unions, community organizations, and the State Employment Development Department's job-services office. The announcement contained the following experience-verification requirement (Tharyil Decl. Exh. A) (emphasis in original):

> Verification (proof) of all experience and/or training needed to qualify must be submitted with the application. . . . Verification may be waived if impossible to obtain. The applicant must submit a signed statement with the application explaining why verification cannot be obtained. Waiver requests will be considered on a case-by-case basis. **Failure to submit the required verification or request for waiver in a timely manner may result in the rejection of the application**.

Out of the pool of applicants for the permanent 7371 positions, MUNI created a final list of eligible candidates on January 8, 2001. The final eligibles list remained in use for one year to draw permanent 7371 mechanics.

Plaintiff Yevgeniy Skuratovsky is a Jewish man originally from Russia (formerly part of the Soviet Union). He worked on the maintenance and repair of submarines for fifteen years while living in Russia. Skuratovsky applied for a provisional 7371 position in response to the December 1999 listing. On the basis of his application, test and interview, he was ranked

2

fourteenth, one below the hiring cutoff (Hao Decl. Exh. E).[1] Skuratovsky was interviewed again in conjunction with the June 2000 round of hiring. In that round, he was ranked tenth, four spots too low to be hired (Jensen Decl. Exh. D). Skuratovsky did not apply for the provisional 7371 position in response to the July 2000 listing. He did submit an application for a permanent 7371 position in response to the October 2000 listing. Skuratovsky, however, failed to include an experience verification with his application or seek waiver of the verification requirement. He received notice in November 2000 that his application was disqualified for failure to provide the verification and thus he did not make it onto the eligibles list for permanent positions (Vandiver Decl. Exh. C).

Plaintiff Anatoliy Zolotarev is a Jewish man originally from Belarus (formerly part of the Soviet Union). He worked in road construction in Belarus for seven years. Zolotarev did not apply for any 7371 positions, provisional or permanent, in response to any of the above listings. Zolotarev applied for a similar mechanic position (a "7409 position") in 1998. Although he apparently passed the test for the 7409 position, he was not hired for that position. He allegedly was informed that his application would "remain in the active file should a vacancy occur in the Division" (Zolotarev Decl. ¶ 3). Zolotarev contended that he was either misled or not informed of the opportunity to apply for the various provisional or permanent 7371 positions described above. According to Zolotarev, "I never contacted by MUNI about jobs in 2000 or 2001. I was never even told that MUNI would no longer keep my application on file for future vacancies" (*id*. ¶ 5).

On January 26, 2005, the above-captioned plaintiffs (including Zolotarev and Skuratovsky) filed their initial complaint, which they have since amended twice. In their third claim for relief, plaintiffs alleged a deprivation of their civil rights under Section 1981 by all

---

[1] It appears from the ranking list that Skuratovsky's total score was equal to another candidate John B. (John B. is not a party and since his personnel records have been filed under seal his name is concealed here) (Benay Decl. Exh. A, under seal). It is not clear whether John B. was placed above Skuratovsky on the list because of John B.'s higher written score, because John B.'s name precedes Skuratovsky alphabetically, or some other reason. This order does not resolve this ambiguity, however, since it only addresses the statute of limitations, not the existence of discrimination.

3

1  defendants.[2] Underlying this claim, plaintiffs alleged that defendants discriminated on the basis
2  of race by giving preferential treatment to Asian and Filipino applicants for the provisional and
3  permanent 7371 positions. Plaintiffs contended that MUNI hired Asian and Filipino applicants
4  who did not meet the minimum qualifications for the positions. Plaintiffs also contended that
5  defendants failed to make information about 7371 openings available to potential candidates,
6  such as Zolotarev, who were not Asian or Filipino. This failure allegedly included flawed
7  information about permanent openings in 2001, and about the provisional 7371 positions
8  offered in 2000 that ultimately could have led to permanent positions. On January 17, 2006,
9  this Court issued an order denying class certification. The claims were thus to proceed
10 individually. Defendants now move for partial summary judgment solely as to the Section 1981
11 claims of plaintiffs Zolotarev and Skuratovsky.

**ANALYSIS**

Summary judgment is proper where the pleadings, discovery and affidavits show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. *Playboy Enters., Inc. v. Netscape Communic'ns Corp.*, 354 F.3d 1020, 1023–24 (9th Cir. 2004). Once the moving party meets its initial burden, the nonmoving party must "designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (citation omitted).

**1.    STATUTE OF LIMITATIONS FOR SECTION 1981.**

The parties both agree that the applicable statute of limitations for Skuratovksy and Zolotarev's Section 1981 claim is one year (Opp. 8). Where, as here, the relevant statute does

---

[2] Plaintiffs also make claims for violation of 42 U.S.C. 1983 and for violations of the California Fair Housing and Employment Act.

4

1  not contain its own statute of limitations, "courts borrow the most appropriate state statute of
2  limitations." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004).[3]
3  "California's one-year statute of limitations for personal injury actions governs claims brought
4  pursuant to 42 U.S.C. §§ 1981, 1983, and 1985." *Taylor v. Regents of Univ. of Cal.*, 993 F.2d
5  710, 711 (9th Cir. 1993).

   The only issues, therefore, are whether Skuratovsky and Zolotarev's Section 1981 claims accrued more than one year before they filed their initial complaint, January 26, 2005, and if so, whether the time bar was limited by a principle of equity.

   **2.   ACCRUAL.**

   "Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 926 (9th Cir. 2004) (internal citation omitted); *see also Delaware State College v. Ricks*, 449 U.S. 250, 259 (1980). "[A] claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Olsen*, 363 F.3d at 926 (internal citation omitted). "[T]he question is when the operative decision was made, not when the decision is carried out." *Ibid.* (internal citation omitted); *see also Aronsen v. Crown Zellerbach*, 662 F.2d 584, 593 (9th Cir. 1981).

   Plaintiffs argue that under *Vaughan v. Grijalva*, 927 F.2d 476, 480 (9th Cir. 1991), courts use state law for the question of when they should have known of the existence of their claims. Under California law, plaintiffs suggest, accrual is determined by the "discovery rule" — the date on which plaintiffs knew or should have know of their injury. Under *Olsen*, *supra*, it is an inaccurate statement of law that the accrual analysis in federal court "borrows" from state law. Yet the distinction is academic. Federal law builds in this "discovery rule," as was explained by a Seventh Circuit opinion relied on by both sides:

---

[3] Section 1981 was amended in 1990 so as to include a four-year limitations period for certain actions. This limitations period, however, does not apply to those actions which were cognizable under the pre-1990 version of Section 1981. *Cholla,* 382 F.3d at 974 n. 5 (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004)). Plaintiffs Section 1981 claim for failure to hire would have been cognizable under the pre-1990 version. *See, e.g.*, *Patterson v. McLean Credit Union*, 491 U.S. 164, 180–82 (1989).

5

> Accrual is the date on which the statute of limitations begins to run. It is not the date on which the wrong that injures the plaintiff occurs, but the date — often the same, but sometimes later — on which the plaintiff discovers that he has been injured. *The rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the "discovery rule" of federal common law, which is read into statutes of limitations in federal-question cases* (even when those statutes of limitations are borrowed from state law) in the absence of a contrary directive from Congress. The discovery rule is implicit in the holding of *Ricks* that the statute of limitations began to run "at the time the tenure decision was made and communicated to Ricks."

*Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) (emphasis added) (internal citations omitted).

With these principles in mind, both plaintiff's claims undoubtedly accrued before January 26, 2005.

Plaintiff Skuratovsky was informed in November 15, 2000 that MUNI rejected his application for a permanent 7371 position (Vandiver Decl. Exh. C). That is the date of accrual here. Skuratovsky knew (or should have known) of the injury after learning of the rejection. *See Ricks*, 449 U.S. at 259 (claim accrued on day teacher notified his tenure was denied).

Plaintiff Zolotarev's claim accrued on or around October 2000 when the deadline for submitting applications for the permanent 7371 position ended. Zolotarev argues that his claims never accrued because he was never notified of a denial. But the reason Zolotarev never received any notice is because he never applied for *any* of the 7371 positions, provisional or permanent (Zolotarev Dep. 44). His potential candidacy for the permanent position was automatically "denied" on the deadline date listed in MUNI's advertisement of the position. He knew or should have known that he would not be considered for a 7371 position at or around the passing of the deadline and certainly by the time he heard nothing from MUNI about his purportedly pending application.

### 3. EQUITABLE TOLLING.

Absent equity, the claims of both plaintiffs' were barred by late 2001. One question, therefore, is whether the statute of limitation was equitably tolled during the four years between the date of accrual and the date of the original complaint.

6

Plaintiff apparently concede that equitable tolling does not apply in this action (Opp. 15). To be thorough, however, "[i]n civil rights suits, this court applies state tolling rules as long as they 'are not inconsistent with federal law.'" *Guerrero v. Gates*, 442 F.3d 697, 706 n. 34 (9th Cir. 2006). Under California law, "these requirements control: timely notice and absence of prejudice to defendant and plaintiff's good faith and reasonable conduct." *Daviton v. Columbia/HCA Healthcare Corp.*, 241 F.3d 1131, 1137 (9th Cal. 2001) (citing *Addison v. State of California*), 21 Cal.3d 313, 319 (1978)).

Skuratovsky presents no issue of material fact as to the reasonable conduct he took to obtain the basic information about his Section 1981 claim. Skuratovsky gives no indication of what effort he expended to investigate the denial of his application in the period between November 2000 and 2004. At most, Skuratovsky indicates the "revelation" about possible discrimination "did not come to light until 2004 when [fellow plaintiff] Alex Lukovsky told him about the possibility that Defendants had discriminated against him in 2000" (Opp. 12). That is simply an insufficient showing of diligence on a motion for summary judgment to find equitable tolling.

Likewise, Zolotarev gives no indication of what actions he took to investigate MUNI's failure to hire him (for a job for which he did not even investigate whether he had a pending application). He simply fails to rebut a finding of lack of reasonable diligence.[4]

### 4. EQUITABLE ESTOPPEL.

Plaintiffs argue defendants are equitably estopped from asserting the statute of limitations.

"Equitable estoppel, also termed fraudulent concealment, halts the statute of limitations when there is 'active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time.'" *Guerrero*, 442 F.3d at

---

[4] Furthermore, equitable tolling is inappropriate as defendants have shown prejudice. "A plaintiff whose ignorance of the statutory period is excusable may file a lawsuit outside that period as long as he causes no prejudice to the defendants by doing so." *Guerrero*, 442 F.3d at 706; *Daviton.*, 241 F.3d at 1137. The loss of documents and the fading of memories is a real detriment to defendants preparing their case, given the elapsing of four years since the 7371 hiring in question in the complete absence of notice of a possible lawsuit.

7

706 (citing *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176–77 (9th Cir.2000)). Under California law, the elements of equitable estoppel are:

> (1) the party to be estopped must be apprised of the facts; (2) that party must intend that his or her conduct be acted on, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) the party asserting the estoppel must reasonably rely on the conduct to his or her injury.

*Honig v. San Francisco Planning Dep't*, 127 Cal. App. 4th 520, 529 (2005); *see also Lantzy v. Centex Homes*, 31 Cal. 4th 363, 383 (2003).

Plaintiffs both fail at step two. Neither Skuratovsky nor Zolotarev have shown that defendants should be equitably estopped as to his Section 1981 claim. The basis for equitable estoppel, according to plaintiffs, is that defendants concealed the fact that they hired unqualified Asian and Filipino applicants for 7371 positions for which they were purportedly qualified. This amounts to an argument that defendants are equitably estopped because they denied liability for the allegations in the complaint. Such an argument is untenable. "The defendant's statement or conduct must amount to a misrepresentation bearing on the necessity of bringing a timely suit; the defendant's mere denial of *legal liability* does not set up an estoppel." *Lantzy*, 31 Cal. 4th at 384 n. 18 (2003) (emphasis in original).

Plaintiffs have not pointed to any misrepresentations by defendants aimed at concealing the underlying facts about the 7371 hiring process. Zolotarev was not hired because he never submitted an application and never bothered to inquire as to why his application was not still pending based on his application to a different job classification. MUNI gave him no further information to distract him from the trail of his purported claim and did not tell him his 7409 application constituted an application for 7371 positions two years later.

Likewise, MUNI rejected Skuratovsky because he ranked lower than other candidates and because he failed to comply with the application procedures. This is what MUNI told him. They did not make any false assertions about the qualifications of the other candidates or about the need for an experience verification. Equitable estoppel is not applicable.

**United States District Court**
For the Northern District of California

**CONCLUSION**

For the foregoing reasons, Zolotarev and Skuratovsky's Section 1981 claims are time-barred. Defendants' motion is **GRANTED**. Finding no further argument necessary, the hearing on this motion is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated:  July 17, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE